UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WHITFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>ASHOK PARMAR and CENTRAL BAKERSFIELD PAIN MANAGEMENT,<br><br>    Defendants. | Case No. 1:24-cv-00581-JLT-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM AND TO DENY PLAINTIFF'S MOTION TO AMEND AS MOOT<br><br>(Docs. 9, 10)<br><br><u>14- DAY DEADLINE</u> |

    This matter is before the Court on the filing by Plaintiff Steven Whitfield ("Plaintiff") of several amended complaints (Docs. 6, 7, 8, 10) following the Court's screening of both the initial complaint and the first amended complaint and directing a response by Plaintiff. *See* (Docs. 3, 5). Plaintiff, who is proceeding *pro se*, did not pay the filing fee and instead filed an application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915. (Doc. 2). The statute requires federal courts to screen IFP complaints and dismiss the case if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

    As discussed in more detail below, Plaintiff's most recently filed amended complaint lacks the pleading of facts sufficient to state a cognizable claim upon which relief may be granted.

1  Additionally, the complaint still contains defects in its pleading of federal subject matter
2  jurisdiction that were identified in the Court's two earlier screening orders.  The Court finds that
3  the deficiencies in the amended complaint cannot be cured by amendment.  For the reasons set
4  forth below, the undersigned recommends that Plaintiff's complaint be dismissed without leave to
5  amend.

6  **I.       BACKGROUND**

7  In his initial complaint, Plaintiff invoked federal question jurisdiction under 28 U.S.C. §
8  1331.  (Doc. 1).  In its screening order of July 17, 2024, the Court found that Plaintiff had not
9  pled sufficient facts to state a cognizable claim upon which relief may be granted.  Additionally,
10 the Court found that the complaint contained deficiencies which deprived the Court of jurisdiction
11 over Plaintiff's claims.  Plaintiff was given 21 days to file a first amended complaint or a notice
12 of voluntary dismissal.  *See* (Doc. 3).  Plaintiff filed a first amended complaint on August 12,
13 2024.  (Doc. 4).

14 In its screening order of Plaintiff's first amended complaint entered August 22, 2024, the
15 Court found that Plaintiff had failed to plead either a Title III ADA claim or a Title VI Civil
16 Rights Act claim and that Plaintiff's failure to adequately plead these claims deprived this Court
17 of federal question jurisdiction, which in turn likely would result in a decision to decline to
18 exercise supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff was given 21 days to
19 file a second amended complaint or a notice of voluntary dismissal.  *See* (Doc. 5).

20 On September 16, 2024, Plaintiff filed a second amended complaint.  (Doc. 6).  Plaintiff
21 then lodged with the Court two additional complaints.  (Docs. 7, 8).  On September 27, 2024,
22 Plaintiff filed a motion to amend his complaint (Doc. 9), and lodged another complaint with the
23 Court, titled "Fifth Amended Complaint" (Doc. 10).  In his motion, Plaintiff explains that the
24 prior filed and lodged complaints were defective (Doc. 9 at 1) and that, during the 21-day
25 timeframe in which he was required to file his second amended complaint, he was going through
26 significant medical complications (*id.* at 2).

27 As such, the Court will consider Plaintiff's complaint titled "Fifth Amended Complaint"
28 (Doc. 10) as the operative second amended complaint.

## II. SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must conduct an initial review of a pro se complaint proceeding *in forma pauperis* and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); *see also Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); *Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) (affirming s*ua sponte* dismissal for failure to state a claim). If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez*, 203 F.3d at 1130.

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of that the plaintiff's claims are and the grounds upon which they rest. *See e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In reviewing a pro se complaint, a court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94

1  (2007).  However, although a court accepts as true all factual allegations contained in a

2  complaint, a court need not accept a plaintiff's legal conclusions as true.  *Iqbal*, 556 U.S. at 678.

3  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . .

4  'stops short of the line between the possibility of entitlement to relief.'"  *Id*. (quoting *Twombly*,

5  550 U.S. at 557).

6       Courts may deny a pro se plaintiff leave to amend where amendment would be futile.

7  *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) (citing *Cook, Perkiss &*

8  *Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)); *see Lucas v. Dep't of*

9  *Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995) (holding that dismissal of a pro se complaint without

10  leave to amend is proper only if it is clear that the deficiencies cannot be cured by amendment or

11  after the pro se litigant is given an opportunity to amend).

12       Finally, it is well established that an "amended complaint supersedes the original, the

13  latter being treated thereafter as non-existent.  In other words, the original pleading no longer

14  performs any function."  *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir.

15  2015) (internal citations and quotations omitted).  As such, this Court must screen the second

16  amended complaint without reference to the original complaint, and therefore, the second

17  amended complaint must stand on its own.

18       **III.**    **SUMMARY OF THE SECOND AMENDED COMPLAINT**

19            **a.  Plaintiff's Allegations**

20       Plaintiff's allegations in his second amended complaint are largely similar to those in both

21  his initial and first amended complaints.  (Docs. 1, 4).  Plaintiff alleges he is an "individual with a

22  'latent disability' as a 'recovered substance abuser,'" having a narcotic addiction from a young

23  age. (Doc. 10 at 6).[1]  Plaintiff began a methadone detoxification and maintenance program after

24  many years of addiction.  Though it is not entirely clear from the second amended complaint,

25  Plaintiff seems to have received daily administered doses of methadone for two-and-a-half to

26  three-and-a-half years, after which Plaintiff has remained free of illicit drug use.  *Id*.

---

[1] In referencing Plaintiff's complaint, the Court uses the document pagination provided by CM/ECF as reflected in the document header.

Plaintiff alleges he is prescribed hydrocodone in ten milligram doses four times "as needed." *Id.* at 9. Plaintiff's precise meaning is unclear but presumably Plaintiff intends to convey that dosing is at regular intervals. Plaintiff alleges that he was informed by his previous insurance carrier that he will be required to begin OxyContin to properly address the severity of his pain progression, due to the number, severity, and nature of Plaintiff's diseases and ailments. *Id.*

Plaintiff alleges that Defendant's acts or omissions caused him to suffer severe and significant emotional distress and withdrawal symptoms, including insomnia, severe cramps and abdominal pain, nausea, vomiting, and life-threatening hypertension. Plaintiff alleges that Defendant's acts or omissions subjected Plaintiff to suffer these issues for at least 14 days, which he alleges is due to "abrupt and medically abandoned treatment, medications and/or medical supervision," putting him at increased risk of overdose and death. *Id.*

Plaintiff claims that Defendants have violated Title III of the Americans with Disabilities Act ("ADA"), providing the statutory basis as 42 U.S.C. section 12101, *et seq.*, by "denying, refusing, or discriminating against Plaintiff on the basis of" his disability, by denying a qualified individual an equal opportunity to participate in, or benefit from, services, programs, or activities, including medications, medical care, and supervision, in violation of 28 C.F.R. § 35.130, subsections (a) and (b). *Id.* at 11. Plaintiff alleges that he had requested Defendant Parmar make "reasonable corrections/modifications" to his existing business practices and policies, including changes to the "opioid contract" policies and practices. Plaintiff alleges they, as written and applied, seriously violate Plaintiff's rights. *Id.* at 7.

Plaintiff alleges that he was given an appointment date of January 24, 2023, but mistakenly calendared the date as January 28, 2023. When he visited the Defendants' facility on January 28, 2023, he was "informed of his error and that he would have to re-schedule." Plaintiff did so that day and was informed by Defendants' staff that he would have to wait "perhaps 3-5 working says" until Defendant Parmar could see him. *Id.* at 8.

After waiting approximately 14 days without contact from Defendants informing Plaintiff he could retrieve his prescription refill, he "exercised his legal option," meaning he terminated the

5

physician-patient relationship which triggered an "immediate refill prescription." As a result, Plaintiff suffered "serious opioid withdrawal symptoms" for approximately 14 days. Plaintiff states that this violated the CDC's and FDA's mandates, as it was an abrupt discontinuation of a "controlled medication patient." Plaintiff alleges that Defendant Parmar owed him a duty of care, failed to meet that duty, and as a result of that breach, Plaintiff was harmed. *Id.*

Plaintiff alleges he was, and is, medically defined as "opioid addicted" and that fact should support a claim of discrimination and denial of full and equal opportunity to access programs and services "that are offered to other persons who have different" disabilities. He alleges he is a qualified individual with a disability who was excluded from participation in, or denied the benefits of, "public entity" (presumably intended to mean a place of public accommodation), and this exclusion, denial, or discrimination was due to his disability, solely or in part. He claims, additionally, that he suffers from osteoarthritis, a degenerative condition in his left hip, and other ailments that are not mentioned. *Id* at 12.

Finally, Plaintiff includes causes of action for violation of 42 U.S.C. § 1981, Rehabilitation Act § 504, Title II of the Civil Rights Act, res ipsa loquitur, statutory violations of Title III of the ADA, patient abandonment, and statutory violations of the California Unruh Act. *Id.* at 10-15. He seeks a declaratory judgment against Defendant regarding violation of Title III of the ADA, an order requiring Defendant to comply with the ADA, compensatory damages, statutory damages, attorneys' fees, and costs. *Id.* at 15.

### b. Discussion – Plaintiff's ADA Claim

The ADA was enacted in response to a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 557, 577 (2009). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*. (internal citations omitted). Title III establishes a "[g]eneral rule" that:

///

///

6

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (leases to), or operates a place of public accommodation.

*See* 42 U.S.C. § 12182(a).  Specifically, Title III prohibits a place of public accommodation from denying disabled individuals "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."  42 U.S.C. § 12182(b)(1)(A)(i).

To state a claim under Title III of the ADA, a plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied full and equal treatment by defendant because of his disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

The Court of Appeals has held that "[d]rug addiction that substantially limits one or more major life activities is a recognized disability under the ADA."  *Thompson v. Davis*, 205 F.3d 890, 896 (9th Cir. 2002).  *See Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 737 (9th Cir. 1999) (holding that Title II of the ADA applies to zoning ordinances concerning a methadone rehabilitation clinic); *Intervention911 v. City of Palm Springs*, No. CV 13-01117 MMM (OPx), 2014 WL 12853165, at *15 (C.D. Cal. July 7, 2014) ("the ADA protects persons recovering from drug or alcohol addiction") (citing *Pacific Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013)).  Liberally construing his allegations summarized above, Plaintiff has pled a disability under Title III of the ADA.

Turning to the second prong, Plaintiff must allege that Defendants are private entities that own, lease, or operate a place of public accommodation.  Plaintiff pleads that Defendant "Central Bakersfield Pain Management" is a business entity.  (Doc. 10 at 2).  However, the complaint provides no additional information as to this Defendant.  Defendant Parmar appears to be a physician affiliated with the private entity known as Central California Pain Management, located at the same address as Plaintiff listed for "Central Bakersfield Pain Management."  Plaintiff alleges that he "visited defendant's business obtained [sic] his 30-days supply of his controlled medication and was provided his next scheduled appointment date."  *Id.* at 8.  Liberally

7

construing the facts, it is apparent that Defendant is a private person or entity that own, lease, or operate a place of public accommodation.

However, as to the third prong, Plaintiff still fails to plausibly allege that he was denied public accommodations by Defendants *because* of his disability. *See Espino v. Walgreen Co.*, No. 2:15-cv-00423-MCE-AC, 2015 WL 2452622, at *3 (E.D. Cal. May 21, 2015) (dismissing Title III ADA claim where complaint lacked any allegations that plaintiff was denied medications because of his disability). First, Plaintiff alleges that he had requested Defendant Parmar make "reasonable corrections/modifications" to his existing business practices and policies, including changes to the "opioid contract" policies and practices. *Id.* at 7. Plaintiff provides no further details as to what policies or practices were discriminatory or what corrections or modifications he requested. Nor does Plaintiff refer to or attach any copy of these policies or practices or any examples of his communicating corrections or modifications to policies and practices he felt were discriminatory.

Second, Plaintiff alleges that he was given an appointment date of January 24, 2023, but mistakenly calendared the date as January 28, 2023. When he visited the Defendants' facility on January 28, 2023, he was "informed of his error and that he would have to re-schedule." Plaintiff did so that day and was informed by Defendants' staff that he would have to wait "perhaps 3-5 working says" until Defendant Parmar could see him. (Doc. 10 at 8).

After waiting approximately 14 days without contact from Defendants informing Plaintiff he could retrieve his prescription refill, he "exercised his legal option," meaning he terminated the physician-patient relationship which triggered an "immediate refill prescription." As a result, Plaintiff suffered "serious opioid withdrawal symptoms" for approximately 14 days. Plaintiff states that this violated the CDC's and FDA's mandates, as it was an abrupt discontinuation of a "controlled medication patient." Plaintiff alleges that Defendant Parmar owed him a duty of care, failed to meet that duty, and as a result of that breach, Plaintiff was harmed. *Id.*

Even assuming the truth of these allegations, Plaintiff provides no facts regarding what acts or omissions by Defendants resulted in a denial of full and equal treatment. Most importantly, Plaintiff does not explain how Defendants discriminated against him as a former

long-term substance abuser receiving rehabilitation for addiction. In order words, the complaint fails to allege that Plaintiff experienced a denial of full and equal treatment because of his disability. Plaintiff alleges he mis-calendared an appointment and thus missed it. He then scheduled a new appointment and was given an approximate wait of three to five days. However, upon 14 days passing without word from Defendants, he terminated his relationship with Defendants to receive an automatic termination refill.

It is not known from the face of the complaint whether Defendant had discriminatory intent, whether Defendant implemented a discriminatory policy, or whether there occurred any other discriminatory behavior or omission. *See Smith v. Walgreens Boots Alliance, Inc.*, No. 20-cv-05451-CRB, 2021 WL 3861451, at *5-6 (N.D. Cal. Feb. 3, 2021) (dismissing ADA claim because plaintiff did not plausibly plead that allegedly discriminatory policies were the reason for the mistreatment she allegedly experienced since she did not plead that those policies prohibited defendants from filling her prescriptions for opioid medications).

"Long waits or slow service, assuming they affect all patients or customers, do not establish discriminatory intent." *Crumb v. Orthopedic Surgery Med. Grp.*, No. 07-cv-6114-GHK-PLAx, 2010 WL 11509292, at *4 (C.D. Cal. Aug. 18, 2010), aff'd, 479 F. App'x 767 (9th Cir. 2012). Plaintiff fails to satisfy the third prong required to state a claim under Title III of the ADA.

### c. Discussion – Plaintiff's 42 U.S.C. § 1981 Claim

In his second amended complaint, Plaintiff pleads an additional claim upon which this Court might exercise subject matter jurisdiction pursuant to 42 U.S.C. § 1981. (Doc. 10 at 10). The relevant portion of the statute, the contract clause, provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981's scope is not limited to racial discrimination in the formation of a contract. Racial discrimination in the performance or termination of a contract, among other things, may violate Section 1981's contract clause. 42 U.S.C. § 1981(b). "[A] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.*

9

*v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Here, Plaintiff's allegations relevant to his Section 1981 claim are defective. Plaintiff does not provide plausible facts establishing that he suffered the loss of a legally protected right as a result of his race. Plaintiff alleges that Defendants' acts or omissions violated his rights in a "[healthcare] and [c]ontractual-relationship" under section 1981, since Plaintiff is a "member of a racial minority (black), (2) the Defendants had an intent to discriminate on the basis of race; and (3) the discrimination interfered with a protective activity under [s]ection 1981." (Doc. 10 at 10). However, Plaintiff does not provide any facts to establish his legal conclusions, particularly as to Defendants discriminating against him due to his race and, but for that discrimination, he would not have suffered the loss of a legally protected right. As such, Plaintiff fails to plausibly allege a claim for relief under 42 U.S.C. § 1981.

### d. Discussion – Plaintiff's Rehabilitation Act § 504 Claim

In his second amended complaint, Plaintiff pleads an additional claim upon which this Court might exercise subject matter jurisdiction pursuant to the Rehabilitation Act § 504. (Doc. 10 at 10). The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, was the "first major federal statute designed to protect the rights of ... the handicapped people of this country." *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir.1990); *see Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 626 (1984) (describing the Act as "a comprehensive federal program aimed at improving the lot of the handicapped"). Section 504 creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance. *Kling v. Los Angeles Cnty.*, 633 F.2d 876, 878 (9th Cir.1980).

Here, Plaintiff's allegations relevant to his Section 504 claim are defective. As noted above, Plaintiff has failed to plausibly allege facts showing he was subjected to disability discrimination. Additionally, Plaintiff has failed to plausibly allege facts showing that the Defendants' programs or activities receive federal financial assistance or were receiving it at the time of his alleged incident. As such, Plaintiff fails to plausibly allege a claim for relief under Rehabilitation Act § 504.

### e. Discussion – Plaintiff's Title II Civil Rights Act Claim

In his second amended complaint, Plaintiff pleads an additional claim upon which this Court might exercise subject matter jurisdiction pursuant to Title II of the Civil Rights Act. (Doc. 10 at 10).

Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a *et seq.*) provides in pertinent part that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin."  "To state a *prima facie* case, a Title II plaintiff must demonstrate that he: (1) is a member of a protected class, (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better." *E.g., Crumb*, 2010 WL 11509292, at *3 (citations omitted).

Here, Plaintiff's allegations relevant to his Title II claim are defective. He does not plead he was denied the full benefit of public accommodation and such services were available to similarly situated persons outside of his protected class who received full benefits or were treated better. As noted in discussing Plaintiff's other federal claims above, "[l]ong waits or slow service, assuming they affect all patients or customers, do not establish discriminatory intent." *Id.* Plaintiff has proffered no evidence that he waited longer than other patients on the whole. As such, Plaintiff fails to plausibly allege a claim for relief under Title II of the Civil Rights Act.

\*    \*    \*    \*    \*

In sum, Plaintiff has failed to plead a Title III ADA claim, a Section 1981 claim, a Section 504, or a Title II Civil Rights Act claim. Furthermore, Plaintiff's failure to adequately plead these claims deprives this Court of federal question jurisdiction, which in turn likely would result in a decision to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *E.g.*, *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997) (noting that state law claims should be dismissed if federal claims are dismissed). For these reasons, the Court abstains from evaluating

Plaintiff's state law claims since it appears that federal subject matter jurisdiction is lacking.

Plaintiff has twice been given leave to amend and has been unable to cure the deficiencies of his complaint. Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that no amendment can cure the defect." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212–13 (9th Cir. 2012)); *see Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[a]lthough leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

In light of the procedural history of this case and Plaintiff's repeated inability to cure his pleading defects, the Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore, further leave to amend is futile and should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); *Lopez*, 203 F.3d at 1127. Therefore, the undersigned recommends this action be dismissed with prejudice.

*[Remainder of this page intentionally left blank.]*

## IV. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is **HEREBY RECOMMENDED** that:

1. The Court dismiss this case without leave to amend for failure to state a claim; and

2. The Clerk of Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. **Any pages filed in excess of the 15-page limitation may be disregarded** by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **October 24, 2024**                    _____
                                                    UNITED STATES MAGISTRATE JUDGE